IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR363 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| KATRINA L. GURNEY, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by its counsel, Justin E. Herdman, United States Attorney, and Jason W. White, Special Assistant United States Attorney, and respectfully submits this memorandum for the sentencing of the defendant, Katrina L. Gurney. The United States agrees with the Presentence Investigation Report (PSR) that the defendant's adjusted advisory Sentencing Guidelines total offense level is 14 and her criminal history category is III. (Doc. No. 18 at ¶ ¶ 36, 46). Thus, the advisory guideline imprisonment range is 21 to 27 months (Zone D). (Doc. No. 18 at ¶ 68). For the reasons set forth below, this Court should sentence the defendant to a term of imprisonment of between 21 and 27 months as prescribed by the Sentencing Guidelines, a three-year term of post-release supervision, and be ordered to pay restitution in the amount of $76,408.77 to the Social Security Administration ("SSA") and $47,265.00 to the Mansfield Metropolitan Housing Authority ("MMHA").

I.      **FACTUAL BACKGROUND**

On July 2, 2019, the defendant pleaded guilty to one count of Conspiring to Defraud the United States in violation of 18 U.S.C. § 371 and two counts of Theft of Government Property in violation of 18 U.S.C. § 641. By pleading guilty, the defendant admitted to providing false

statements to the SSA and Mansfield Metropolitan Housing Authority in order to steal $76,408.77 in Supplemental Security Income ("SSI") benefit payments and $47,265.00 in Housing Choice Voucher Program ("HCVP") benefits.

The defendant and her co-defendant, Ronald Gurney, were married in 1998. Later, in 2001 and 2002, the defendant applied to receive SSI. SSI is a federal cash assistance program administered by SSA to help elderly or disabled Americans with little or no income or resources cover basic necessities. To determine the amount of SSI benefits a recipient receives, SSA relies on a monthly assessment of the recipient's income and resources, as well as the household income and other support the beneficiary receives. As such, SSA routinely considers the income of spouses or parents in its eligibility determinations of married beneficiaries or minor children, so long as the spouse or parent resides in the home with the beneficiary. SSA relies primarily upon beneficiaries to self-report their income and resources when it determines SSI eligibility. The defendant here did not disclose that she was married or lived with her husband when she applied for SSI and was approved to receive benefits.

From the time of their marriage and after, the defendant resided with her co-defendant husband. Despite this co-habitation, the defendant and her husband made numerous false statements to SSA in order to maintain eligibility to receive SSI. In 2007, the defendant submitted a statement to SSA claiming that her husband did not reside with her. In 2010, she did not disclose that her husband resided with her and claimed that the two had been separated since 2000. In 2011, the defendant's husband submitted a statement to SSA stating that he did not reside with the defendant. In 2016, 2017, and 2018, the defendant falsely stated to SSA that she did not reside with her husband. Had SSA known about the co-habitation, it would have considered Ronald Gurney's income and determined that the defendant was not eligible to receive benefits.

In addition to making false statements to SSA themselves, the defendant and her husband procured and submitted false statements from others to perpetuate their fraud. In 2016, the defendant submitted two statements from another person that indicated that she lived alone. In 2017, the defendant submitted two additional statements from two other people that indicated that her husband did not reside with her. Also in 2017, Ronald Gurney requested that another person provide a written statement to SSA that falsely stated that he resided with him for the previous two years, and that he did not reside with the defendant. The defendant and her husband submitted these statements with the goal of maintaining Katrina's eligibility to receive SSI when they knew she would not have been entitled to those funds.

In 2002, around the time the defendant applied for SSI, she submitted an application to the MMHA for subsidized housing benefits. Known colloquially as "Section 8," benefits paid as part of the Housing Choice Voucher Program ("HCVP") are intended to provide financial assistance to low-income families so they may obtain quality housing in the private market. This program is also an income-based program and relies on the voucher holder to provide truthful information of household composition and the monthly gross income of the household's members. As was the case with her dealings with SSA, the defendant did not report that her husband lived in her household nor did she report his earnings on two applications and at least 18 periodic certifications forms to MMHA. Accordingly, the defendant received subsidized housing benefits she would have otherwise been ineligible for based on her husband's income.

In total, the defendant and her husband's scheme defrauded SSA in the amount of $76,408.77 and MMHA of $47,265.00.

## II. APPLICATION OF § 3553(a) FACTORS

Based on all of the information before the Court, the government respectfully requests that the Court sentence the defendant to a term of imprisonment of between 21 and 27 months

as prescribed by the Sentencing Guidelines, a three-year term of post-release supervision, and be ordered to pay restitution in the amount of $76,408.77 to the SSA and $47,265.00 to MMHA. The government submits that the recommended sentence adequately reflects the statutory factors to be considered under 18 U.S.C. § 3553(a) in imposing a sentence, particularly:

> (1) the nature and circumstances of the offense and the characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; [and]
> (7) the need to provide restitution to any victims of the offense.

Specifically, the very egregious nature of the defendant's conduct—that she stole federal benefits from two programs intended for those most in need—clearly outweigh any mitigating characteristics that may warrant a non-incarceration sentence.

First, the nature scope and circumstances of the defendant's conduct here warrants a within-Guidelines range sentence. Over the course of 173 months, the defendant and her husband continued to steal money they knew was not theirs. In total, that theft accumulated to over $76,000 in SSI benefits and over $46,000 in housing subsidy benefits that could have been used to help those individuals actually in need and eligible to receive benefits. Throughout their scheme, the defendant and her husband submitted no less than six statements to SSA claiming that they did not reside together and 20 false statements to MMHA. What is more astounding is that the defendant and her husband also provided four statements from others as they attempted to substantiate their false claims to SSA. In 2017, the defendant's husband asked his friend to submit a statement to SSA indicating that the defendant's husband

lived with him for the last two years.  This is not a case where the defendants simply kept their living arrangement quiet or even just made false statements themselves.  This case represents the highest form of deceit where the defendants enlisted the help of others to perpetuate their fraudulent scheme. The duration, scope, and expanse of the defendant's criminal conduct necessitates an incarceration sentence.

To further compound the seriousness of her offense, the defendant's theft here caused real financial harm to programs relied upon by millions of Americans for their financial security.  In 2019, the SSA will pay SSI benefits to over eight million disabled and low-income individuals so that they may pay for housing, food, and other necessities.  Soc. Sec. Admin., SSI Monthly Statistics, January 2019, https://www.ssa.gov/policy/docs/statcomps/ssi_monthly/index.html#toc (last visited Oct. 1, 2019).  The SSA programs are grounded upon the idea that when a person is elderly, widowed, or disabled or otherwise in need, current workers will help support that person, just as he or she helped support others.  Furthermore, the federal government assists over two million low-income households in securing safe and adequate housing through the HCVP.  Ctr, on Budget and Pol'y Priorities, United States Federal Rental Assistance Fact Sheet, https://www.cbpp.org/research/housing/federal-rental-assistance-fact-sheets#US (last visited Oct. 1, 2019).  When the defendant here stole from these crucial federal programs, she did not just steal from a government agency, she stole from every American who paid into the system and every American whose circumstances are such that they need the help.  The eligibility requirements of these programs work to ensure that those who qualify are those who truly need the assistance the benefits provide.  Through their dishonestly, the defendants took money that should have been paid who was truly in need.

5

Additionally, a sentence of imprisonment here will afford an adequate deterrence to potential future fraudsters and restore confidence in these federal benefit programs. These programs are designed to help those Americans in the greatest need. The sentence recommended by the government will work to deter those who may attempt to defraud the agency whose work is so crucial for so many Americans. A guidelines sentence will work to reverse the adverse effect the defendant's conduct has had and will help to strengthen the integrity of these programs.

Finally, an order for the payment of restitution is paramount in the sentencing in this case. In total, the defendant stole $76,408.77 from SSA and $47,265.00 to MMHA and these programs must be made whole so the money the defendant stole can be used to provide benefits to those who qualify for these essential programs. Accordingly, the government respectfully requests this Court order the defendant to pay restitution in the amount of $76,408.77 to the SSA and $47,265.00 to MMHA.

The sentence recommended within the Guideline range is sufficient, but not greater than necessary to comply with the sentencing purposes in 18 U.S.C. § 3553(a)(2). "[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see*, *e.g.*, *Gall v. United States*, 552 U.S. 38, 46 (2007) (Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Moreover, within-guidelines sentences promote Congress's goal in enacting the Sentencing Reform Act – "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).

The government reserves the right to respond to defense arguments raised for the first time after filing of this memorandum. Similarly, if the Court is considering a *sua sponte*

6

departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the PSR, the parties are entitled to notice and an opportunity to respond. Fed R. Crim. P. 32(i)(1)(c) and 32(h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

### III. CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court impose a sentence within the advisory Guidelines range.

Respectfully submitted,

JUSTIN HERDMAN
United States Attorney

By: /s/ Jason W. White
Jason W. White (NY: 4672267)
Special Assistant United States Attorney
United States Court House
801 W. Superior Ave., Suite 400
Cleveland, OH 44113
(216) 622-3874
(216) 522-2403 (facsimile)
Jason.W.White@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December 2019 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Jason W. White
Jason W. White
Special Assistant United States Attorney